```
          IN THE UNITED STATES DISTRICT COURT
              WESTERN DISTRICT OF ARKANSAS
                   FAYETTEVILLE DIVISION
```

MSC, LLC                                              PLAINTIFF

        v.                Civil No. 07-5153

TRANSMONTAIGNE INC.;
TRANSMONTAIGNE LLC;
TRANSMONTAIGNE PARTNERS LP;
and RAZORBACK LLC                                     DEFENDANTS

## MEMORANDUM OPINION

On January 26, 2009, a hearing was conducted on defendants' **Motion to Exclude Plaintiff's Proposed Expert Witness Craig Hull (Doc. 40).** The parties have submitted post-hearing briefs (Docs. 60-62) and the matter is now ripe for consideration. The Court, being well and sufficiently advised, finds that the motion should be **GRANTED**. The Court finds and orders as follows with respect thereto:

    1.   This diversity action arises out an incident in October 2006 involving the release of petroleum products onto plaintiff's property from a pipeline facility owned and operated by the defendants. Plaintiff seeks to recover damages for injury to its property, asserting state-law claims of trespass, nuisance, and negligence.

    2.   Craig Hull, a commercial real estate broker and certified planner, prepared a "Marketability Assessment - Impact Analysis" for plaintiff's counsel in August 2008. In this report, Hull estimates that plaintiff's property has been diminished in value by

approximately $2.4 million due to the contamination.  In the motion now before the Court, defendants seek to exclude Hull's testimony, arguing that he is not qualified to render an expert opinion on diminution in value and that the methodology he employed is unreliable.

    3.   Federal Rule of Evidence 702 provides that if scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto if:

    (1)   the testimony is based upon sufficient facts or data;

    (2)   the testimony is the product of reliable principles and methods; and

    (3)   the witness has applied the principles and methods reliably to the facts of the case.

    4.   A trial judge must make a preliminary assessment of whether the proffered expert's methodology is both scientifically valid and applicable to the case.  See Bland v. Verizon Wireless, 538 F.3d 893, 896 (8th Cir. 2008).  Under Rule 702, as amplified by Daubert, 509 U.S. 579 (1993) and Kumho Tire, 526 U.S. 137 (1999), factors bearing upon this determination include whether the expert's theory or technique:

    (1)   can be and has been tested;

    (2)   has been subjected to peer review and publication;

(3)   has a known or potential rate of error; and

(4)   has gained general acceptance in the relevant community.

Id.

## TEMPORARY OR PERMANENT PROPERTY DAMAGE

5.   Hull's opinions regarding diminution in value are only admissible if plaintiff can prove that the damage to its property is permanent rather than temporary.  See Felton Oil Co. v. Gee, 357 Ark. 421 (2004); State v. Diamond Lakes Oil Co., 347 Ark. 618 (2002).  Plaintiff's environmental expert, Steven Hart, prepared a report stating that the property can be effectively remediated in ten years using a "biosparge system."

6.   Plaintiff argues that it can nevertheless recover for diminution in value because the property will be permanently stigmatized from the contamination.  There is caselaw suggesting that if complete remediation of the property will not restore the value of the property to its prior level, a plaintiff may recover the diminution in value that would remain.  See e.g. In re Paoli Railroad Yard PCB Litigation, 35 F.3d 717, 798 (3rd Cir. 1994), cert. denied, 513 U.S. 1190 (1995); Walker Drug Co., Inc. v. La Sal Oil Co., 972 P.2d 1238, 1246-47 (Utah 1998); Terra-Products, Inc., 653 N.E.2d 89, 92-93 (Ind. 1995); Frank v. Environmental Sanitation Mgmt., Inc., 687 S.W.2d 876, 883 (Mo. 1985).[1]

---

[1] Defendants cite Highland Indus. Park, Inc. v. BEI Defense Sys. Co., 192 F.Supp.2d 942 (W.D. Ark. 2002), rev'd on other grounds, 357 F.3d 794 (8th Cir. 2004), a case from this district, for the proposition that dimunition in value based on stigma is not recoverable.  Highland is distinguishable, however, as the plaintiff in that case sought

7. The problem the Court sees is that the plaintiff has not offered sufficient proof to create a jury question on the stigma issue. The only proof offered by the plaintiff is Hull's opinion that "[a]t the end of the ten year period, assuming successful completion of the clean-up, a slight (approximately 10%) residual stigma will remain." When cross-examined about this at the Daubert hearing, Hull responded, "That's my guess, my estimation." (Hearing Tr. at pg. 65.)

8. In Finkelstein v. Department of Transp., 656 So.2d 921 (Fl. 1995), an appraiser prepared a "summary representation ... that the contamination stigma reduced the value of the property twenty to twenty-five percent." The Florida Supreme Court held:

> At oral argument, DOT's counsel did not know whether sales of comparable contaminated property or other facts and data were the underlying basis for the proffered opinion. For a real property expert's opinion of a reduction in market value to be admissible it must have a basis in facts and data reasonably relied upon by experts in the field of real property valuation ....
>
> An opinion as to a decrease in value cannot be a mere surmise that because property is contaminated, it logically follows that the value of the property is decreased. There must be a factual basis through evidence of comparable contaminated property upon which to base a determination that contamination has decreased the value of the property.

Id. at 925.

---

residual dimunition in value as temporary damages and also sought restoration costs. In the present case, the plaintiff seeks residual dimunition in value as permanent damages in lieu of restoration costs.

-4-

9. Hull offered no facts or data supporting his conclusion that the property would be permanently stigmatized. He simply surmised that it would be from the fact that it was contaminated and he "guess[ed]" or "estimate[d]" that this would result in a 10% diminution in value. The Court, therefore, finds that Hull's opinion regarding a permanent stigma is unreliable and, therefore, not admissible. Accordingly, absent some other evidence on the issue (and none is proffered), plaintiffs cannot recover for diminution in value of the property due to "stigma".

10. Given the above conclusion, it is unnecessary for the Court to address the methodology employed by Hull in arriving at the diminution in value figure of 2.4 million dollars. However, the Court will nevertheless do so because even if it had reached the opposite conclusion -- and found that there was a jury question as to whether the property is permanently stigmatized -- the Court would (and does) conclude that the diminution-in-value methodology employed by Hull to support his opinion on that issue is unreliable.

In his report, Hull employed two alternative methods in computing the diminution in value to the property caused by the contamination. Neither method is sound, however, as neither limits the diminution in value to the purported 10% diminution that will remain after the 10-year remediation period due to the allegedly

permanent stigma.  Further, neither method was based on reliable facts or data.  The Court will address each method in turn.

### METHOD ONE

11.  Hull opines that, due to the contamination, if the property were to be sold *now*, it could only be sold for between $300,000 to $500,000 to a cash buyer that did not require financing.  Hull bases this opinion on "interviews" he conducted of five local lenders, who, as stated in Hull's report, expressed "reluctance" to finance the purchase of the property until all contamination issues have been completely resolved and indemnification is in place.

In his report, Hull did not detail the questions he asked in the interviews, nor the verbatim responses.  When cross-examined about this at the <u>Daubert</u> hearing, Hull acknowledged that the only question he asked the lenders was:

> If I brought you a deal, one of which the guy's got contamination on it and ongoing activities about investigation of the extent ... thereof, versus a similar property, a similar pricing structure, and similar zoning for the same deal, which one would I get approved on?

The lenders responses were "[t]he clean one."  (Hearing Tr. at 61.)

Hull also acknowledged on cross-examination that he did not advise the lenders of plaintiff's 10-year remediation plan or of the potential for defendant to indemnify the plaintiff for the costs of remediation.

In Player v. Motiva Enterprises, LLC, 2007 WL 2020086 (3rd Cir. 2007), a licensed appraiser opined that contamination of the property decreased its value because the contamination caused a lack of financing options. The appraiser based his opinion on a "survey" of a handful of lenders who purportedly indicated that they would not approve a loan to purchase the property or would require substantial conditions on such a loan. The Third Circuit held that the appraiser's methodology was unreliable, observing:

> The word "survey" actually gives [the appraiser's] work a greater air of scientific validity than is warranted. He sent an e-mail to a handful of lenders and asked a question fashioned, it seems, to get the negative answer his clients hoped for. He told the lenders he was valuing property and had to "consider a number of detrimental conditions. One ... is the difficulty of getting financing for a contaminated site...." If you load the question (e.g. positing contamination) and then tell someone you expect an outcome (e.g., difficulty in getting financing), being told that may indeed be the outcome hardly seems a fair confirmation of a neutral hypothesis.

Id. at *3.

The Court finds that the methodology employed by Hull in reaching his conclusion that financing is not available is equally unreliable. Hull questioned only five lenders and merely asked them which property they would finance – contaminated or uncontaminated property. As in Player, this was obviously a loaded question rather than a neutral hypothesis. Further, Hull failed to advise the lenders of plaintiff's remediation plan or of the

-7-

potential for indemnification of the remediation costs, both of which would factor into financing considerations.

## METHOD TWO

12. In his report, Hull described this as an alternative approach based on holding the property for 10 years and then selling it at the end of the 10 year remediation period. Hull opined that the property would increase in value at a rate of 20% every year as it was being remediated. Hull provided no facts or data to support this opinion and he acknowledged at the Daubert hearing that this approach was very speculative. The Court, therefore, finds that the calculations employed by Hull in Method Two are unreliable.

## CONCLUSION

13. Based on the foregoing, defendant's **Motion to Exclude Plaintiff's Proposed Expert Witness Craig Hull (Doc. 40)** is **GRANTED** and Hull will not be permitted to testify to the opinions expressed in his report.

14. Plaintiff's **Motion to Strike the Declaration of Defendants' Witness, Randall Bell (Doc. 44)** is **DENIED** as moot, as the Court did not consider Bell's declaration in ruling on the motion to exclude Hull.

15. **Part A of Plaintiff's Motion in Limine (Doc. 42)** -- which seeks to exclude Bell's testimony -- is likewise **DENIED** as moot,

since defendants indicated that they did not intend to call Bell if Hull was excluded.

IT IS SO ORDERED this 2nd day of February, 2009.

                                      /S/JIMM LARRY HENDREN
                                      JIMM LARRY HENDREN
                                      UNITED STATES DISTRICT JUDGE